[No. B047283. Second Dist., Div. Three. Apr. 16, 1990.]

ALBERT WOODS, JR., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE MUNICIPAL COURT OF THE COMPTON JUDICIAL
DISTRICT OF LOS ANGELES COUNTY et al., Real Parties in
Interest.

**COUNSEL**

Wilber F. Littlefield, Public Defender, Laurence M. Sarnoff, Randall Rich, Nori Anne Walla and Henry J. Hall, Deputy Public Defenders, for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

No appearance for Real Parties in Interest.

**OPINION**

**KLEIN, P. J.—**

### INTRODUCTION

Petitioner Albert Woods, Jr. (Woods), an indigent charged with the crime of cruelty to a child by endangering health, a misdemeanor (Pen. Code, § 273a, subd. (2)), seeks a free transcript of a prior civil proceeding.

The events giving rise to the civil proceeding were the same as the events alleged in the criminal complaint, and the alleged victim in the criminal case was also one of the complaining witnesses in the civil proceeding.

The municipal court denied Woods's motion for a transcript of the civil proceeding, and Woods's petition to the superior court for a writ of mandate was summarily denied. Upon petition to this court, an alternative writ of mandate was issued.

Petition granted.

### FACTUAL AND PROCEDURAL BACKGROUND

In a complaint filed January 24, 1989, Woods was charged with one count of violation of Penal Code section 273a, subdivision (2) on or about January 17, 1989. The alleged victim is Woods's 16-year-old daughter.

On January 26, 1989, Carolyn West (West)[1] filed an action against Woods under the Domestic Violence Prevention Act (Code Civ. Proc., § 540 et seq.) in the Superior Court of Los Angeles County (Case No. SCD 17553) and an order to show cause (OSC) and a temporary restraining order

---

[1] The record reflects West and Woods were not related but had been living together and were the parents of a minor child.

(TRO) were issued. In her application for the OSC, West declared the daughter was abused by Woods on January 12 and January 17, 1989.

At the March 1, 1989, hearing on the petition, three witnesses, including the daughter, were sworn and testified. Woods was present but was not represented by counsel. The superior court granted the petition and signed and filed the requested TRO.

On November 14, 1989, the municipal court called the criminal matter, which had been continued several times, for pretrial hearing and trial. Woods, represented by the public defender, made a motion for a court order providing a transcript of the OSC and TRO proceedings held on March 1, 1989. The public defender advised the municipal court the events giving rise to that hearing were the same as the events alleged in the criminal complaint, and that the alleged victim had testified. He explained he would like the transcript for "relevant impeachment purposes as it might appear at the trial in Mr. Woods'[s] criminal case." He argued the information was relevant and that neither the public defender's office nor Woods had the funds to pay for a transcript. It was not determined whether the prosecution knew of the civil hearing or had a transcript.

The municipal court acknowledged the transcript was material in that it contained relevant facts, but denied the request on the grounds it knew of no authority entitling Woods to a transcript of a "collateral matter." The municipal court also pointed out that any affidavits filed in the application for the TRO would be available for use as impeachment.

Woods's petition for writ of mandate in the superior court seeking reversal of the municipal court order was summarily denied. Upon Woods's petition to this court, an alternative writ of mandate was issued.

## ISSUE

Does due process entitle an indigent criminal defendant to a transcript of the testimony of witnesses in a prior civil proceeding concerning the same events which are the basis of the criminal action at which some of the same witnesses will testify? We answer the question in the affirmative.

## DISCUSSION

1. *Due Process Principles*

As declared by the United States Supreme Court, due process entitles an indigent defendant to "[m]eaningful access to justice." (*Ake* v. *Oklahoma* (1985) 470 U.S. 68, 77 [84 L.Ed.2d 53, 62, 105 S.Ct. 1087].)

"This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." (470 U.S. at p. 76 [84 L.Ed.2d at p. 61].)

■ To implement that principle, "basic tools of an adequate defense" must be provided by the state. (*Britt* v. *North Carolina* (1971) 404 U.S. 226, 227 [30 L.Ed.2d 400, 403, 92 S.Ct. 431].) The *Ake* court held that these basic tools, "the raw materials integral to the building of an effective defense," (*Ake* v. *Oklahoma, supra*, 470 U.S. 68, 77 [84 L.Ed.2d 53, 62]) include not only the effective assistance of counsel (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Evitts* v. *Lucey* (1985) 469 U.S. 387 [83 L.Ed.2d 821, 105 S.Ct. 830]) and blood grouping tests in a paternity action (*Little* v. *Streater* (1981) 452 U.S. 1 [68 L.Ed.2d 627, 101 S.Ct. 2202]), but access to a psychiatrist when the indigent criminal defendant's insanity is a significant factor in his defense. (*Ibid.*)

The *Ake* court also identified three factors relevant to a determination of whether a defense tool is important enough to require the state to provide it to the indigent defendant. "The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided." (470 U.S. at p. 77 [84 L.Ed.2d at p. 62].)

Both the state and the individual have a compelling interest in the accuracy of a criminal proceeding that places the defendant's life or liberty at risk. (470 U.S. at pp. 78-79 [84 L.Ed.2d at p. 63].) The third factor, the probable value of the requested tool, will depend upon the procedural and factual circumstances of the particular case.

In *Britt* v. *North Carolina, supra*, 404 U.S. 226, the court held a criminal defendant is entitled to a transcript of a prior mistrial. The *Britt* court identified two factors that are relevant to the determination of need for a free transcript: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." (*Id.*, at p. 227 [30 L.Ed.2d at pp. 403-404].) However, "it can ordinarily be

assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." (*Ibid.*) ■ Accordingly, the California Supreme Court has held that "an indigent defendant in a criminal trial is *presumed* to have a particularized need for a transcript of prior proceedings, just as he is *presumed,* if he needs a transcript at all, to need nothing less than a complete transcript." (*People* v. *Hosner* (1975) 15 Cal.3d 60, 66 [123 Cal.Rptr. 381, 538 P.2d 1141], italics in original.)

Furthermore, the defendant who claims the right to a free transcript does not bear the burden of proving inadequate any suggested alternatives. (*Britt* v. *North Carolina, supra,* 404 U.S. at p. 230 [20 L.Ed.2d at p. 405].)

## 2. The Requested Transcript

The municipal court denied Woods's request for a transcript because it knew of no authority entitling a defendant to a transcript of a hearing on an alleged collateral matter. Both *People* v. *Contreras* (1981) 127 Cal.App.3d 248 [176 Cal.Rptr. 589], and *Rutkowski* v. *Municipal Court* (1983) 146 Cal.App.3d 248 [194 Cal.Rptr. 88], referred to by the municipal court, like *Britt* and *Hosner, supra,* involved the right of a criminal defendant to a transcript of a prior mistrial.

Nevertheless, the controlling due process principles expressed by the Supreme Court are not so limited. The *value* of a transcript of sworn testimony by a complaining witness of the same events as those alleged in the criminal complaint is not diminished by the circumstance that the prior proceeding happened to be "collateral" or civil in nature. Such testimony necessarily has the potentiality for the same use as testimony in the same criminal proceedings. Indeed, defense counsel expressly stated effective representation of Woods required acquisition of the transcript for impeachment purposes at trial.[2]

Respondent municipal court contends there was no abuse of discretion in denying the request for a transcript, suggesting Woods failed to make an adequate showing of need.[3] Respondent also contends the presumption that alternative devices are inadequate does not apply,[4] and points out, in

---

[2] We recognize, of course, that a mistrial transcript is valuable to counsel in other ways as well, such as in the evaluation of trial strategy and the effectiveness of potential witnesses. This fact does not negate its value for cross-examination and impeachment purposes.

[3] Respondent municipal court also points out that the motion was denied without prejudice. However, this ruling was in regard to possible citation to legal authority, not to a demonstration of need.

[4] Respondent municipal court cites *In re Darrell T.* (1979) 90 Cal.App.3d 325 [153 Cal.Rptr. 261], in which the court affirmed the trial court's denial of a minor's motion for a transcript of the hearing of a severed codefendant's fitness hearing. The holding in that case

denying the request, the municipal court mentioned the possible use of affidavits filed in support of the TRO.

We find that Woods established his entitlement to the transcript, regardless of whether he had the burden of proof regarding the inadequacy of alternative devices. The prosecutor voiced no opposition to Woods's motion. Also, even if such an affidavit existed, a written affidavit filed weeks before a hearing is not the equivalent of oral testimony in the courtroom before a judge and subject to cross-examination. A transcript of such oral testimony would be useful to the defense even if it only were to confirm consistency with the affidavit. Also, in this particular case, there was no basis for the municipal court to assume an affidavit of the 16-year-old daughter existed.[5]

Under the circumstances of this case, where the prior hearing concerned the same events which are the subject of the criminal complaint and the testimony of potential prosecution witnesses, including that of the alleged victim, due process requires the state to provide the indigent defendant with a transcript.[6]

## DISPOSITION

The alternative writ is discharged. Let a writ of mandate issue, directing the municipal court to grant Woods's motion for a transcript of the prior civil hearing.

Danielson, J., and Croskey, J., concurred.

---

rested upon the fact that nothing material to the ultimate adjudication of the minor's guilt or innocence had transpired at the fitness hearing.

[5] Although a copy of the civil request for a retraining order was not before the municipal court, we observe it was based upon the declaration of West only.

[6] A criminal defendant represented by the public defender is presumed to be indigent. (*People* v. *Vaughn* (1981) 124 Cal.App.3d 1041, 1045-1046 [177 Cal.Rptr. 773].)